**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

Lawrence Rice, individually and on
behalf of all others similarly situated,

                  Plaintiff,

      - against -

Dreyer's Grand Ice Cream, Inc.,

                 Defendant

1:21-cv-03814

Class Action Complaint

Jury Trial Demanded

        Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

        1.      Dreyer's Grand Ice Cream, Inc. ("defendant") manufactures, labels, markets and sells "Vanilla Milk Chocolate Almond" ice cream bars purporting to be "dipped in rich milk chocolate," presented with chunks of chocolate, a vanilla flower and almonds, under the Häagen-Dazs brand ("Product").



2.     The other label representations emphasize the Product's ingredients:

> Madagascar vanilla, rich milk chocolate
>
> and toasted California almonds make this
>
> unmatched icon legendary.
>
> **thät's daz**



# I.     DEFINITION OF CHOCOLATE

3.     Chocolate is defined by Merriam-Webster as a food "prepared from ground roasted cacao beans."

4.     Dictionary.com defines chocolate as a "a preparation of the seeds of cacao, roasted, husked, and ground, often sweetened and flavored, as with vanilla."

5.     The Cambridge Dictionary describes chocolate as "a sweet, usually brown, food made from cacao seeds, that is usually sold in a block."

6.     Google Dictionary – based on its leading search engine that discovers the most

relevant and accurate information – defines chocolate as "a food preparation in the form of a paste or solid block made from roasted and ground cacao seeds, typically sweetened."

7.      To make chocolate, cacao beans are "Fermented, roasted, [and] shelled," producing cacao nibs.

8.      The nibs are ground to produce cocoa mass or chocolate liquor and then combined with dairy ingredients, sweeteners and flavorings.

9.      This state, and the Food and Drug Administration ("FDA"), adopted these dictionary definitions and define chocolate as made from cacao beans with a small amount of optional ingredients, including dairy (i.e., milk), sweeteners and flavorings. See 21 C.F.R. § 163.130(a).

10.     While a definition draws a sharp boundary around a term to provide meaning, words are also defined by what they exclude.[1]

11.     In the context of chocolate, all definitions universally exclude fats from sources other than cacao ingredients, namely, vegetable fats (oils).[2]

12.     Federal and state regulations require that where a food has some chocolate but is mainly vegetable oils, this should be disclosed to consumers. 21 C.F.R. § 163.155(c).

## II.     CONSUMERS EXPECT CHOCOLATE TO BE MADE FROM CACAO BEANS

13.     Historians of chocolate note that "Mixing unnatural ingredients with chocolate – with the intent of extending the quantity of raw product and defrauding customers – has a long history."[3]

14.     The main adulterants and extenders were starches and vegetable fats.

15.     In 2007, a group of the largest confectionery companies, which included the previous

---

[1] Carnap and Bar-Hillel.

[2] Vegetable oils are sometimes referred to as vegetable fats because they may be solid at room temperature.

[3] L.P. Brindle and B.F. Olsen, Adulteration – The Dark World of 'Dirty' Chocolate," in Chocolate (eds. L.E. Grivetti and H.Y. Shapiro) (2009).

owner of Defendant, Nestle, S.A., sought to re-define chocolate by replacing cacao ingredients with "cocoa butter equivalents" ("CBE"), or vegetable fats.

16.     Over thirty-thousand Americans submitted critical comments, crashing the FDA's website.

17.     In an interview on National Public Radio ("NPR"), Cybele May, proprietor of candy review website, was asked, "if it's labeled chocolate, [does] it has to have cocoa butter in it?"[4]

18.     May replied, "Absolutely, and it cannot contain other vegetable oils. It has to be completely from the cocoa bean."

19.     The Los Angeles Times interviewed consumers about this proposal, with one stating, "The idea of substituting vegetable oil for cocoa butter, a natural component of the cocoa bean that is the traditional source of chocolate," "would [make her] feel like [she] was being duped."[5]

20.     One chocolatier commented, "This is all a question of money. If they can take something and dilute it, and still get the taste [for] a fraction of the cost, that's what they want. *But the taste is not the same, he and others said.*" (emphasis added)

21.     San Francisco-based Gary Guittard of Guittard Chocolate Co., described "this [episode] as a battle for the soul of the popular confection."

22.     Fran Bigelow, of Fran's Chocolates in Seattle, was asked if she would "ever use vegetable fats and oils instead of cocoa butter in [her] chocolate?," and responded, "No, no, no…we just are fighting to protect the integrity of chocolate," by "educat[ing] consumers."

23.     The proposal was defeated, in part due to chocolate colossus and industry leader, Mars Wrigley, which stated:

---

[4] Rebecca Roberts, An Argument Against 'Healthy' Chocolate, Talk of the Nation, Apr. 24, 2007, NPR; candyblog.net.
[5] Jerry Hirsch, The Courage of their Confections, Apr. 14, 2007, Los Angeles Times.

At Mars, the consumer is our boss, and American consumers are passionate about chocolate. They don't want anyone to change the chocolate they've enjoyed for generations…As a privately held company, we have the freedom to invest in the highest quality chocolate and deliver what consumers want.

24.   Consumer surveys, including one of over four hundred Americans, reached the same conclusions.

25.   Roughly sixty percent of respondents who viewed the Product's front label chocolate statements with chunks of chocolate – expected it would contain more cacao bean ingredients than it did and would not contain lower quality chocolate substitutes.

## III.  REASONS WHY CONSUMERS WANT CHOCOLATE FROM CACAO BEANS

26.   For several reasons, consumers are misled when a food represented as containing chocolate replaces cacao beans with soybeans, or other vegetable oils.

27.   First, cacao ingredients are several times more expensive than vegetable oils.

28.   Though cocoa butter makes up one-fourth of chocolate, it costs more than three times as much as vegetable oil.

29.   Bigelow stated, "there's no benefit to the consumer [to eliminate cacao ingredients], but there's a benefit to the manufacturers that are using those vegetable oils or the lower-cost ingredients."

30.   Second, cacao ingredients provide greater satiety than vegetable oils – they are more filling, instead of leaving the consumer feeling like they did not eat anything or ate less, even though their caloric contents are roughly similar.

31.   The result is greater consumption of empty calories.

32.   Third, the creamy and smooth taste of chocolate is eliminated when vegetable oils are added in place of the cocoa butter from chocolate from cacao beans.

33.   The substitution of vegetable oils – in amounts as low as five percent – contribute to

a waxy and oily mouthfeel and leave an aftertaste.

34.     Cocoa butter, according to Jay King, the president of the Retail Confectioners International, "is the essence of the taste, texture and 'mouth feel'" of chocolate.

35.     Though proponents of the plan to add vegetable oils to chocolate claimed consumers "won't notice if they change it," Jean Hammond of Kilwin's Ice Cream Shops, disagreed:

> Just that little bit of vegetable oil changes the mouthfeel. It makes it taste waxy. You would just be stunned at the difference in taste. They're just not comparable We take chocolate just very, very seriously. Chocolate-ish is not good enough.

36.     Fourth, chocolate has health and nutrition benefits that vegetable oils lack.

37.     Numerous studies have indicated that flavonoids in cacao beans positively affect the heart and arteries against harmful free radicals.

38.     Vegetable oils raise cholesterol, contain artery-clogging trans-fats and saturated fats, and are linked to higher rates of heart disease.

39.     Cocoa butter contains relatively heart-healthy, unsaturated fats, which does not cause elevated cholesterol or greater risks of heart disease.

40.     Fifth, chocolate is a natural ingredient, while vegetable oils are made through synthetic means.

41.     Consumers across all demographics increasingly prefer foods that are natural and avoid highly processed synthetic ingredients made with additives.

42.     Chocolate is made through fermentation, roasting, and grinding of cacao beans.

43.     In contrast, vegetable oils are highly refined and bleached, subjected to hydrogenation and interesterification, with chemical catalysts, such as nickel and cadmium.

## IV.   THE "MILK CHOCOLATE" CONTAINS INGREDIENTS INCONSISTENT WITH CHOCOLATE

44.     The representation of the Product's coating as "Milk Chocolate" and drizzled in rich

milk chocolate with pictures of chocolate is misleading, and at best, a "half-truth," because the chocolate contains ingredients not found in real chocolate – "Coconut Oil."

INGREDIENTS: VANILLA ICE CREAM: CREAM, SKIM MILK, SUGAR, EGG YOLKS, VANILLA EXTRACT. MILK CHOCOLATE AND VEGETABLE OIL COATING WITH ALMONDS: MILK CHOCOLATE (SUGAR, WHOLE MILK POWDER, CHOCOLATE, COCOA BUTTER, SOY LECITHIN, VANILLA EXTRACT), ALMONDS ROASTED IN VEGETABLE OIL (ALMONDS, SAFFLOWER OIL), COCONUT OIL.

INGREDIENTS: VANILLA ICE CREAM: CREAM, SKIM MILK, SUGAR, EGG YOLKS, VANILLA EXTRACT. **MILK CHOCOLATE AND VEGETABLE OIL COATING WITH ALMONDS:** MILK CHOCOLATE (SUGAR, WHOLE MILK POWDER, CHOCOLATE, COCOA BUTTER, SOY LECITHIN, VANILLA EXTRACT), ALMONDS ROASTED IN VEGETABLE OIL (ALMONDS, SAFFLOWER OIL), COCONUT OIL.

45.     The ingredient list reveals that what is described on the front label as "MILK CHOCOLATE" is actually "MILK CHOCOLATE AND VEGETABLE OIL COATING."

46.     Consumers who view the ingredient list and see "Coconut Oil" listed as the least predominant ingredient will not know this ingredient is still present in a significant, appreciable amount.

47.     Based on industry specifications for "compound coatings" and evaluation of the saturated fat and cholesterol content listed on the Nutrition Facts, the amount of coconut oil is estimated at approximately twenty percent.

48.     The substitution of coconut oil for cacao beans reduces costs for Defendant.

49.     However, this cost-saving is not passed on to consumers, as they are sold a product represented as containing "rich milk chocolate," and accordingly charged a premium price.

50.     The pictures of the ingredients – chunks of chocolate, a vanilla flower and almonds – tells consumers the Product will contain these highlighted ingredients instead of cheaper

substitutes for them.

51.    The Product does not contain imitation vanilla or almond alternatives, which makes it especially misleading that it contains alternatives to chocolate in the form of vegetable oil.

52.    Consumers expect that companies – especially larger and respected businesses, like Häagen-Dazs – to tell them the truth, not half-truths.

53.    Consumers of a premium ice cream bar, under the Häagen-Dazs brand, will not be so distrustful to scrutinize the fine print of the ingredient list to confirm the front label is accurate.

54.    Guittard stated that nothing prevents a company from making a product without actual chocolate, but it "has to be labeled 'chocolate flavored' (for it still has the cocoa in it) rather than 'chocolate.' That gives the consumer a signal that something less than chocolate lies beneath the wrapping."

55.    While the Product's ingredient list may give that "signal," consumers expect – and the law requires it – to be disclosed prominently on the front of the label, as "milk chocolate and vegetable oil coating." 21 C.F.R. § 163.155(c).

56.    Even chocolate aficionados such as Cybele May indicated that expectations for chocolate are so well-established that she "do[es]n't want to have to flip over the chocolate bar to read the ingredients to know what I'm getting. I want to know on the front that it is chocolate with cocoa butter."

57.    Reasonable consumers must and do rely on a company to honestly identify and describe the components and features of the Product.

58.    The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

59.    Defendant sold more of the Product and at higher prices than it would have in the

absence of this misconduct, resulting in additional profits at the expense of consumers.

60.    Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

61.    The Product is sold for a price premium compared to other similar products, approximately $6.59 for pack of three bars (9 OZ), a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

Jurisdiction and Venue

62.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

63.    Upon information and belief, the aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

64.    Plaintiff Lawrence Rice is a citizen of Illinois.

65.    Defendant Dreyer's Grand Ice Cream, Inc. is a Delaware corporation with a principal place of business in Oakland, Alameda County, California.

66.    The parties are citizens of different states.

67.    Venue is proper because plaintiff resides in this district and a substantial portion of the events giving rise to the claims occurred in this district.

Parties

68.    Plaintiff Lawrence Rice is a citizen of Buffalo Grove, Lake County, Illinois.

69.    Defendant Dreyer's Grand Ice Cream, Inc., is a Delaware corporation with a principal place of business in Oakland, California, Alameda County.

70.    Defendant is one of the largest producers of frozen dairy desserts in the world.

71.    Previously owned by Nestle, defendant is currently operated by the recently created

overseas holding company known only as "Froneri."

72.    Defendant's brands include the super-premium Häagen-Dazs, recognized by consumers for the strictest standards of purity and quality with respect to ingredients.

73.    The Product is sold throughout this state in grocery stores, convenience stores, big box stores, gas station stores, warehouse stores, and is available online.

74.    Plaintiff bought the Product on one or more occasions within the statute of limitations for each cause of action alleged, at stores including Walmart, 1455 E Lake Cook Rd, Wheeling, IL 60090, between February and March 2021, among other times.

75.    Plaintiff bought the Product for no less than the above-referenced price.

76.    Plaintiff saw the front label said, "[Vanilla] Milk Chocolate [Almond]" and "dipped in rich milk chocolate."

77.    Plaintiff saw other parts of the label which described the Product's "rich milk chocolate."

78.    Plaintiff knew that "rich" was an adjective associated with chocolate, as it connotes a smooth mouthfeel.

79.    Plaintiff knew that chocolate substitutes, like vegetable oils, imparted a waxy and oily mouthfeel.

80.    Plaintiff expected the "milk chocolate" part of the Product would only contain chocolate, and that it would not include chocolate substitutes such as coconut oil.

81.    Plaintiff knew that the Häagen-Dazs brand is one of the largest sellers of chocolate covered ice cream bars in this country and expected that if they sold a product represented as "Chocolate" and "Milk Chocolate," with pictures of chocolate, it would not contain ingredients inconsistent with chocolate.

82.     Plaintiff wanted more than a "chocolatey" taste, though he failed to even receive such a taste, because even a small amount of vegetable oils results in a waxy and oily taste.

83.     Plaintiff saw the pictures of ingredients he expected to be in the Product – chunks of chocolate, vanilla (flower) and almonds.

84.     Plaintiff did not observe pictures of coconuts and coconut oil on the front label.

85.     Plaintiff would not have purchased the Product if he knew the representations were false and misleading.

86.     Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the claims made by Defendant.

87.     The Product was worth less than what Plaintiff paid and he would not have paid as much absent Defendant's false and misleading statements and omissions.

88.     Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's representations are consistent with its composition.

<u>Class Allegations</u>

89.     The class will consist of all Illinois residents who purchased the Product during the statutes of limitations for each cause of action alleged.

90.     Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

91.     Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

92.     Plaintiff is an adequate representative because his interests do not conflict with other members.

93. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

94. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

95. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

96. Plaintiff seeks class-wide injunctive relief because the practices continue.

Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, et seq.

(Consumer Protection Statute)

97. Plaintiff incorporates by reference all preceding paragraphs.

98. Plaintiff and class members desired to purchase a Product with a coating that contained chocolate ingredients and not an appreciable amount of chocolate substitutes.

99. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

100. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

101. Plaintiff relied on the representations.

102. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.

103. The Product was manufactured, labeled and sold by defendant and expressly and impliedly warranted to plaintiff and class members that the Product's coating contained chocolate

ingredients and not an appreciable amount of chocolate substitutes.

104. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

105. This duty is based on Defendant's outsized role in the market for this type of Product.

106. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

107. Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices.

108. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

109. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

110. Defendant had a duty to truthfully represent the Product, which it breached.

111. This duty is based on defendant's position, holding itself out as having special knowledge and experience this area.

112. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant.

113. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

114. Plaintiff and class members would not have purchased the Product or paid as much

if the true facts had been known, suffering damages.

<u>Fraud</u>

115.  Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained chocolate ingredients and not an appreciable amount of chocolate substitutes

116.  Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

<u>Unjust Enrichment</u>

117.  Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

  **WHEREFORE**, Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4.  Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5.  Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6.  Other and further relief as the Court deems just and proper.

Dated:   July 18, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan

60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com