UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LAWRENCE RICE, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | 21 C 3814 |
| vs. | ) ) ) | Judge Gary Feinerman |
| DREYER'S GRAND ICE CREAM, INC., | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Lawrence Rice brings this putative class action against Dreyer's Grand Ice Cream, Inc., alleging that the front label of its Häagan-Dazs "Vanilla Milk Chocolate Almond" ice cream bars is deceptive. Doc. 1. Dreyer's moves under Civil Rules 12(b)(1) and 12(b)(6) to dismiss the complaint. Doc. 17. The motion is granted. The complaint is dismissed for lack of standing insofar as it seeks injunctive relief and otherwise is dismissed on the merits for failure to state a claim, though Rice will be given a chance to replead.

**Background**

In resolving a Rule 12(b)(1) motion asserting a facial challenge to subject matter jurisdiction, as in resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, but not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016) (Rule 12(b)(6)); *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (Rule 12(b)(1)). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Rice's brief opposing dismissal, so long as those additional facts "are consistent with the

pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Rice as those materials allow. *See Domanus v. Locke Lord, LLP*, 847 F.3d 469, 478-79 (7th Cir. 2017). In setting forth the facts at this stage, the court does not vouch for their "objective truth." *Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

Dreyer's manufactures, labels, markets, and sells Häagan-Dazs brand ice cream products. Doc. 1 at ¶ 1. Häagan-Dazs "Vanilla Milk Chocolate Almond" ice cream bars contain vegetable oil as well as milk chocolate, almonds, and vanilla ice cream. *Id*. at ¶¶ 44-45. The product's front label describes the bars as "vanilla ice cream dipped in rich milk chocolate and almonds" and displays pictures of chocolate chunks, almonds, and a vanilla flower. *Id*. at ¶¶ 1-2. The front label does not mention vegetable oil, but the ingredients list on the back states that the non-ice cream portion of the product consists of a "milk chocolate and vegetable oil coating with almonds." *Id*. at ¶ 44.

Rice purchased the product in Illinois. *Id*. at ¶ 74. He alleges that because its front label does not disclose the presence of vegetable oil, he was misled into believing that the product does not contain vegetable oil. *Id*. at ¶¶ 76-77, 80-81, 83-84. He claims that, had he been aware that the product contained vegetable oil, he would not have purchased it or would have paid less for it. *Id*. at ¶¶ 59-61, 85-87, 102, 109, 114.

**Discussion**

The complaint purports to bring state law claims for statutory and common law fraud, negligent misrepresentation, unjust enrichment, and breach of express and implied warranty, and a claim under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq*. *Id*. at

2

¶¶ 97-117. In addition to monetary relief, Rice seeks an injunction forbidding Dreyer's from deceiving consumers about the product's ingredients. *Id*. at p. 14, ¶ 3.

I. **Article III Standing for Injunctive Relief**

Dreyer's contends that Rice does not have Article III standing to seek injunctive relief. Doc. 17 at 21. Because Article III standing is jurisdictional, it must be addressed before the merits. *See Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1950 (2019).

"[A] plaintiff must have standing for each form of relief sought." *Chi. Joe's Tea Room, LLC v. Vill. of Broadview*, 894 F.3d 807, 813 (7th Cir. 2018). "To establish standing, a plaintiff has the burden to establish that he has (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial ruling." *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1064 (7th Cir. 2020) (internal quotation marks omitted). "At the pleading stage, the standing inquiry asks whether the complaint clearly alleges facts demonstrating each element in the doctrinal test." *Ibid*. (internal quotation marks and alterations omitted).

"Unlike with damages, a past injury alone is insufficient to establish standing for purposes of prospective injunctive relief … ." *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017). Rather, a plaintiff seeking prospective injunctive relief must "face[] a real and immediate threat of future injury." *Carello v. Aurora Policemen Credit Union*, 930 F.3d 830, 833 (7th Cir. 2019) (internal quotation marks omitted); *see TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210 (2021) ("[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial."). Because Rice is aware of the presence of vegetable oil in the product, he faces no risk of future harm from being deceived by the failure of the product's front label to mention vegetable oil, and he therefore lacks standing to seek

3

prospective injunctive relief. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 741 (7th Cir. 2014) (holding that a plaintiff who had become aware of the defendant's allegedly deceptive practices "is not likely to be harmed by the practices in the future" and thus could not obtain injunctive relief); *In re Herbal Supplements Mktg. & Sales Pracs. Litig.*, 2017 WL 2215025, at *8 (N.D. Ill. May 19, 2017) (St. Eve, J.) ("*Camasta* dealt with Article III standing.").

Rice argues that he faces a threat of future harm because he "intends to … purchase the [p]roduct again when he can do so with the assurance" that the front label's "representations are consistent with [the product's] composition." Doc. 25 at 23. This argument simply confirms that Rice will not again purchase the product while being deceived by its front label. *See Geske v. PNY Techs., Inc.*, 503 F. Supp. 3d 687, 701-03 (N.D. Ill. 2020) ("Most courts to address similar circumstances have held that absent some concrete basis to conclude that the plaintiffs will or must purchase the product again in the future and be deceived, they cannot meet the standing requirements for injunctive relief claims.") (internal quotation marks omitted).

That absent putative class members might be unaware of the presence of vegetable oil in the product, and thus deceived by its front label, does not warrant a different conclusion. The reason is plain: "That a suit may be a class action adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016) (internal quotation marks and alteration omitted); *see also Payton v. Cnty. of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) ("[A] named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs … .") (internal quotation marks omitted). Because Rice fails to plausibly allege a risk

4

of an imminent injury to *himself*, he lacks standing to seek injunctive relief for unnamed class members who might face that risk.

Accordingly, the complaint is dismissed for lack of subject matter jurisdiction to the extent it seeks injunctive relief. *See Castillo v. Unilever U.S., Inc.*, 2022 WL 704809, at *4 (N.D. Ill. Mar. 9, 2022) (reaching the same result in materially identical circumstances).

## II. Merits

### A. Fraud, Negligent Misrepresentation, and Unjust Enrichment Claims

Turning to the merits, Rice claims that the product is deceptively labeled in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.*, because the front label does not disclose that the product's coating contains vegetable oil. Doc. 1 at ¶¶ 97-102. "A deceptive-practice claim under the ICFA has five elements: (1) the defendant undertook a deceptive act or practice; (2) the defendant intended that the plaintiff rely on the deception; (3) the deception occurred in the course of trade or commerce; (4) actual damage to the plaintiff occurred; and (5) the damage complained of was proximately caused by the deception." *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 1000 (7th Cir. 2018). Dreyer's argues that the complaint fails to plausibly allege the first element, a deceptive act or practice. Doc. 17 at 15.

"[A] statement is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001). To be deceptive, a statement must be deceptive to a "reasonable consumer," *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 477 (7th Cir. 2020), "in light of the totality of the information made available to the plaintiff," *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005). Put another way, an ICFA claim "require[s] plaintiffs to prove that the relevant labels are likely to deceive reasonable consumers, which requires a probability that a significant portion of the general consuming

5

public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Bell*, 982 F.3d at 474-75 (internal quotation marks omitted). "[W]here plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." *Id*. at 477.

      Rice cites *Bell* for the proposition that the product's front label is deceptive. Doc. 25 at 11-14. In *Bell*, the plaintiffs claimed that the phrase "100% Grated Parmesan Cheese" on the defendants' products' front labels was deceptive because the products contained other ingredients in addition to cheese. *Bell*, 982 F.3d at 473. The Seventh Circuit held that the phrase "100% Grated Parmesan Cheese" was ambiguous because it could convey to a reasonable consumer any of three messages: that the product was 100% grated, that the cheese in the product was 100% parmesan, or that the product was 100% grated parmesan cheese with no other ingredients. *Id*. at 476-77. The third of those three meanings was false, for although the cheese in the product was 100% parmesan and the product was 100% grated, the product was not 100% cheese. And although the ingredient list on the back made clear that the product included ingredients other than cheese—in other words, that the product was not 100% cheese—the Seventh Circuit ruled that "an accurate fine-print list of ingredients does not foreclose as a matter of law a claim that an ambiguous front label deceives reasonable consumers." *Id*. at 476. To hold otherwise, the court reasoned, would encourage deceptive advertising that "often intentionally use[s] ambiguity to mislead consumers while maintaining some level of deniability about the intended meaning." *Id*. at 477.

      Under the standard articulated in *Bell*, Rice's ICFA claim fails as a matter of law because he does not identify any ambiguous statement on the product's front label. Unlike in *Bell*, the front label here states only that the ice cream is "dipped in rich milk chocolate and almonds"—

6

not that it is dipped in a mixture that is "100% milk chocolate and almonds." Doc. 1 at ¶ 1. It follows that a reasonable consumer would not understand the front label to convey that the ice cream's coating consists *only* of chocolate and almonds. *See Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 937-38 (7th Cir. 2021) (Wisconsin law) (holding that the phrase "made with fresh regional ingredients" on the product's label "did not represent that it was made with 100% fresh regional ingredients"); *Karlinski v. Costco Wholesale Corp.*, __ F. Supp. 3d __, 2022 WL 2867383, at *4-7 (N.D. Ill. July 21, 2022) (dismissing an ICFA claim involving a similar ice cream bar, holding that the phrase "chocolate almond dipped vanilla ice cream bars" on the product's front label does not convey to a reasonable consumer that the coating contains no vegetable oils); *Sarr v. BEF Foods, Inc.*, 2020 WL 729883, at *4-5 (E.D.N.Y. Feb. 13, 2020) (New York law) (holding that the phrase "made with real butter" on the product's label is not deceptive even though the product contains vegetable oil as well as butter). Because Rice acknowledges that the product's coating contains chocolate and almonds, Doc. 1 at ¶ 44, the front label's statement that the ice cream is "dipped in rich milk chocolate and almonds" is not deceptive or misleading. *See Yu v. Dreyer's Grand Ice Cream, Inc.*, __ F. Supp. 3d __, 2022 WL 799563, at *5 n.12 (S.D.N.Y. Mar. 16, 2022) (in dismissing a materially identical statutory consumer fraud claim against Dreyer's, brought under New York law by the same plaintiff's attorney, reasoning that "*Bell* … involved a representation that a product was '100% Grated Parmesan Cheese,' which could be understood to mean 'pure cheese,' when it in fact contained additives … [while] here there is no claim that the Product's coating was purely or exclusively chocolate") (internal citation omitted).

      Pressing the contrary result, Rice argues that accompanying the phrase "dipped in rich milk chocolate" with representations of chocolate chunks rendered the front label ambiguous

7

because "milk chocolate" means "no vegetable oils." Doc. 25 at 10, 13. In support, Rice offers the opinions of chocolatiers and dictionary definitions suggesting that chocolate should not contain vegetable oils. Doc. 1 at ¶¶ 3-6, 11, 20-23; Doc. 25 at 10. But "[w]hat matters" for purposes of Rice's ICFA claim "is how consumers actually behave," *Bell*, 982 F.3d at 481, not what experts in the pertinent field understand or believe. *See Lederman v. The Hershey Co.*, 2022 WL 3573034, at *4 (N.D. Ill. Aug. 19, 2022) ("[E]ven if the reasonable confectionery expert deems milkfat essential to fudge, Plaintiff has not shown that the reasonable 21st century *consumer* has the same expectations. Nowhere in the complaint does Plaintiff allege that the reasonable consumer defines 'fudge' according to classic recipes created by experts."); *Karlinski*, 2022 WL 2867383, at *5 ("On a motion to dismiss, the Court need not accept the conclusion that a reasonable consumer would read the Product's 'chocolate' labeling to imply that the chocolate would be made mostly or entirely of cacao bean ingredients.").

As for actual consumers, Rice refers to a consumer survey reporting that sixty percent of respondents who viewed the product's front label "expected [that the product] would contain more cacao bean ingredients than it did and would not contain lower quality chocolate substitutes." Doc. 1 at ¶ 25. But that survey, even taken at face value, does not suggest that consumers expected the product to not contain *any* vegetable oil. *See Karlinski*, 2022 WL 2867383, at *5 (finding inconsequential a materially identical survey put forth by the same plaintiff's attorney, reasoning that the reported results are "not the same thing as saying that these same respondents concluded that the Product's coating was not chocolate or that they believe chocolate must be made mostly or exclusively from cacao bean ingredients"); *Beers v. Mars Wrigley Confectionery US, LLC*, 2022 WL 493555, at *6 (S.D.N.Y. Feb. 17, 2022) (New York law) (dismissing a similar statutory consumer fraud claim brought by the same plaintiff's

8

attorney, reasoning that "Plaintiff does not represent that the consumers in the survey would expect the Product to contain no vegetable oil, or to contain no other ingredients apart from chocolate made from cacao bean ingredients"); *Yu*, 2022 WL 799563, at *4 ("[N]o reasonable consumer would understand the representations on the Product's label to mean that the coating contained only chocolate."). The cited survey therefore does not render plausible Rice's claim that the product's front label is deceptive.

Because the product is not deceptively labeled, Rice's ICFA claim is dismissed. *See Bober*, 246 F.3d at 940 (affirming the Rule 12(b)(6) dismissal of ICFA claims on the ground that "none of the three statements on which [the plaintiff] based his … claims is deceptive"). Rice's common law fraud and negligent misrepresentation claims fail for the same reason, as an element of both claims is "a false statement of material fact." *See Geschke v. Air Force Ass'n*, 425 F.3d 337, 345 (7th Cir. 2005) (common law fraud); *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833-34 (7th Cir. 2007) (negligent misrepresentation). And given the failure of Rice's fraud claims, his unjust enrichment claim— which, as he admits, "is predicated on the same allegations of deceptive advertising as [his] ICFA … claim[]," Doc. 25 at 22—necessarily fails as well. *See Ass'n Ben. Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007) ("[W]here the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent *claim* of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well.").

## B. Breach of Warranty and MMWA Claims

The same result obtains for Rice's warranty and MMWA claims.

Rice submits that the product's front label expressly warranted that the product has a "coating contain[ing] 'rich milk chocolate.'" Doc. 25 at 19. Because the coating indisputably

9

contains chocolate, Rice does not state a viable breach of express warranty claim. *See Cont'l Sand & Gravel, Inc. v. K & K Sand & Gravel, Inc.*, 755 F.2d 87, 91 n.3 (7th Cir. 1985) (holding that a breach of warranty claim failed where the goods "conformed to the warranties"); *Mydlach v. DaimlerChrysler Corp.*, 875 N.E.2d 1047, 1058 (Ill. 2007) ("If a seller delivers conforming goods, the warranty is satisfied.").

A product breaches the implied warranty of merchantability if it is not "fit for the ordinary purposes for which such goods are used." 810 ILCS 5/2-314(2)(c). The ordinary purpose of an ice cream bar is consumption, and Rice does not allege that Dreyer's product is unfit to eat, so his implied warranty claim fails as well. *See Cerretti v. Whole Foods Mkt. Grp., Inc.*, 2022 WL 1062793, at *6 n.11 (N.D. Ill. Apr. 8, 2022) (in dismissing a substantially similar implied warranty claim, reasoning that the plaintiff "does not argue, for example, that the ice cream bars were inedible"). And because Rice's MMWA claim is based on his state law warranty claims, it also fails as a matter of law. *See Schiesser v. Ford Motor Co.*, 2016 WL 6395457, at *4 (N.D. Ill. Oct. 28, 2016) ("The ability to sustain a cause of action under the Magnuson-Moss Act is dependent on the existence of an underlying viable state-law warranty claim.").

## Conclusion

Dreyer's motion to dismiss is granted. Rice's claims are dismissed without prejudice (a) for want of subject matter jurisdiction insofar as they seek injunctive relief and (b) on the merits insofar as they seek monetary relief. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015) ("Ordinarily, … a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend … ."). Rice has until September 20, 2022, to file an amended complaint. If Rice does

not replead, the dismissal without prejudice of his claims for damages relief will convert automatically to a dismissal with prejudice, and judgment will be entered. If Rice repleads, Dreyer's shall file a responsive pleading by October 11, 2022.

August 30, 2022 
_____
United States District Judge